UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


BILLY JOHN GALLOWAY,        )
                                      )
           Petitioner,         )
                                      )       CIVIL ACTION NO.
VS.                          )
                                      )       3:04-CV-0234-G
NATHANIEL QUARTERMAN, Director, )
Texas Department of Criminal Justice,   )           **ECF**
Correctional Institutions Division,      )
                                      )
          Respondent.      )


## MEMORANDUM OPINION AND ORDER


Before the court is the petition of Billy John Galloway ("Galloway" or "the

petitioner") for a writ of *habeas corpus* pursuant to Title 28, United States Code,

Section 2254.  For the reasons discussed below, the petition is denied.

## I.  BACKGROUND

### A.  Factual Background

The Texas Court of Criminal Appeals recited the following factual background

in its opinion on direct appeal:

During the late summer of 1998, Galloway,[*] his girlfriend, Deannee Bayless,

Galloway's friend Kevin Varga, and Varga's girlfriend, Venus Joy Anderson, were all

on probation or parole with the South Dakota Department of Corrections.  On

September 1, 1998, the four gathered their money and belongings, loaded up

Galloway's automobile, and left South Dakota.

A few days later, the group arrived in Wichita, Kansas, and checked into a

hotel.  That evening, after discussing a plan to lure someone back to the hotel to

blackmail or rob them, Galloway, Anderson, and Bayless went to a bar.  At the bar,

the three met David McCoy, and Bayless talked him into returning to the hotel with

them.  Once there, the men killed McCoy, wrapped his body in a blanket, and loaded

it into Galloway's vehicle.  Driving both Galloway's vehicle and McCoy's car, the

group headed out of Wichita.  After Galloway's automobile stopped running, they

abandoned it in a parking lot with McCoy's body still inside.

The group arrived in Greenville, Hunt County, Texas, September 7, 1998.

Galloway and Varga wanted more money, so they agreed to engage in the same

pickup scheme that they had used in Kansas.  Shortly thereafter, Bayless and

Anderson met David Logie at the Holiday Inn and convinced him to go eat with

them.  With Bayless driving Logie's rental car, the three left the Holiday Inn parking

lot.  Galloway and Varga surreptitiously followed them in McCoy's car.  Shortly

---

[*]        This excerpt from the Court of Criminal Appeals opinion is quoted
*verbatim* except that petitioner's name is substituted for the term "appellant."

thereafter, Bayless pulled off the road near a building. Bayless got out of the car with Logie and told Anderson that she and Logie were going to have sex on the hood of his car. About this time, Galloway appeared and began cursing and hitting Logie with his fist, knocking him down. Varga repeatedly struck Logie with a log, killing him. Bayless took Logie's wallet and credit cards. The group burned McCoy's vehicle and left Greenville in Logie's rental car.

The group traveled to San Antonio, where Bayless and Anderson used the credit cards Bayless had stolen from Logie at a local mall. As they were leaving the mall parking lot, the women noticed a police car behind them, and they pulled into a nearby Wal-Mart parking lot. The officer approached and separated the two women. After Anderson confessed to the murders, officers arrested Bayless and Anderson. Galloway and Varga were arrested later that night. Based on the information Anderson gave in her confession, the authorities located Logie's body near Greenville and notified Kansas authorities about McCoy's murder. *Galloway v. State*, No. 73,766, slip op. at 2-3 (Tex. Crim. App. Jan. 29, 2003), *cert. denied*, 540 U.S. 828 (2003).

## B.  Procedural Background

After hearing evidence of the above incidents, a jury convicted Galloway of capital murder and sentenced him to die by lethal injection. *State v. Galloway*, No. 19,882 (354th Dist. Ct. Hunt County, Tex. Mar. 24, 2000). Galloway appealed to

the Texas Court of Criminal Appeals, which affirmed the conviction and death sentence in an unpublished opinion. *Galloway v. State*, No. 73,766 (Tex. Crim. App. Jan. 29, 2003), *cert. denied*, 540 U.S. 828 (2003). Galloway filed a state application for writ of *habeas corpus* on October 22, 2001. The Court of Criminal Appeals denied relief in an unpublished order. *Ex parte Galloway*, No. 56,856-01 (Tex. Crim. App. Jan. 21, 2004). Galloway filed his federal petition for writ of *habeas corpus* on January 20, 2005. The respondent filed an answer and furnished the state court records on March 25, 2005. The petitioner filed a reply on April 28, 2005. On May 30, 2007, this court issued an order granting limited discovery and giving the petitioner leave to depose his trial attorneys. These depositions, along with the depositions of two legal assistants who worked on the case, were filed with the court on October 5, 2007. On November 7, 2007, the petitioner filed a supplemental brief. On December 5, 2007, the respondent filed a response. Finally, on December 17, 2007, the petitioner filed a reply brief.

In his petition, Galloway contends that his Sixth Amendment right to effective assistance of counsel was violated because his trial attorneys failed to investigate, develop, and present mitigation evidence at the punishment phase of his trial. The respondent denies that Galloway is entitled to relief, for two reasons. First, the respondent asserts, Galloway has failed to exhaust the ground for relief he raises in his federal petition because one of his legal theories and its supporting evidence were not

presented to the state court.  Second, the respondent argues, this claim should be

denied on its merits pursuant to 28 U.S.C. § 2254(b)(2).  This court concludes that

Galloway's petition is not procedurally barred, but that it should be denied on the

merits.

## II.  ANALYSIS

### A.  Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of

1996, 28 U.S.C. § 2254, provide:

> (d)      An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim --
>
>> (1)      resulted in a decision that was contrary
>> to, or involved an unreasonable application
>> of, clearly established Federal law, as
>> determined by the Supreme Court of the
>> United States; or
>>
>> (2)      resulted in a decision that was based on
>> an unreasonable determination of the facts in
>> light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) concerns pure questions of law as well as mixed questions

of law and fact.  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S.

885 (2001).  Under the "contrary to" clause, a federal court may grant the writ of

*habeas corpus* if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). With respect to the "unreasonable application" clause, a federal court may grant a writ of *habeas corpus* if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. Under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.) (as modified on denial of rehearing), *cert. denied*, 531 U.S. 1002 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the

state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This statute applies to all federal *habeas corpus* petitions which, as in the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Resolution on the merits in the *habeas corpus* context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

### B. Is Galloway's Petition Procedurally Barred?

The respondent's first argument that Galloway's petition should be denied relies on 28 U.S.C. § 2254. This section provides that "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). For a claim to be exhausted, the state court system must have been apprised of the same facts and legal theory upon which the petitioner bases his assertion. See *Picard v. Connor*, 404 U.S. 270, 276 (1971) (holding that the state court must have a fair opportunity to consider the same claims and factual allegations that are asserted in the federal petition). Thus, this court is required to compare the legal arguments and factual allegations made by the petitioner in his state *habeas* application with those made here.

If petitioner's arguments and factual allegations made here differ too much from those he made before the state court, the petition is unexhausted and procedurally barred. *Id.* The law does not require, however, that the state and federal petitions be identical. Instead, the exhaustion doctrine requires a state prisoner to "fairly present[]" his claims to the state courts before a federal court will examine them. *Picard*, 404 U.S. at 275. "Fair presentation" of a prisoner's claim to the state courts means that the substance of the claim must be raised in state court. New factual allegations in the federal petition will not render a claim unexhausted unless they "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

The way the Fifth Circuit has applied this rule suggests that, so long as the petitioner presents evidence to the state court in some form, he can present it to the federal court in a more fleshed out form. See *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) (holding that where the petitioner presented the state court with the affidavit of a state *habeas* investigator, which detailed the interviews with the petitioner's family members, the federal court could consider the full affidavits of the family members because they were not "new facts"), *cert. denied*, 532 U.S. 915 (2001); *Anderson v. Johnson*, 338 F.3d 382, 388 (5th Cir. 2003) (holding that where the petitioner asserted in state court that the testimony of one man would have exonerated the petitioner, presenting the federal court with that man's affidavit did

not "fundamentally alter" the state claim). Here, the respondent argues that Galloway's petition is unexhausted, for two reasons. First, he maintains that Galloway has presented new factual allegations to this court. Second, he asserts that the arguments made to the state court are different than those made here. Respondent Dretke's Original Answer with Brief in Support ("Original Answer") at 5.

1. *The Factual Allegations*

The respondent correctly points out that there are differences between the factual allegations Galloway made to the state court and those he makes here. One such difference is that Galloway presents this court with a much more detailed history of his substance abuse. *Compare* Memorandum of Law in Support of Movant's Petition for Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2254 ("Petitioner's Memorandum in Support of *Habeas Corpus*") at 27, 32, 34, 39-40 *with* Application for Post-Conviction Relief Pursuant to Article 11.071 Texas Code of Criminal Procedure ("Petitioner's Application") at 7. He submits affidavits of his birth mother and stepmother on this subject, neither of which was presented to the state court. Attachments to the Memorandum of Law in Support of Movant's Petition for a Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2254 ("Attachments") at Attachments J & K. Galloway also offers a statement he made in January of 2005 detailing his history of drug abuse. *Id.* at Attachment L. He also submits additional evidence to this court regarding his psychological history. In his state *habeas* application, Galloway

informed the court that he had previously "reported hearing voices which tell him to do bad things, seeing bugs, and having delusions of persecution." Petitioner's Application at 7. He informed the state court that he had been diagnosed with intermittent explosive disorder, antisocial personality disorder, and reported an incident of striking himself in the face with a hammer. *Id.* In his federal petition, however, Galloway has provided more detailed psychiatric analyses. Most importantly, between the time of his petition to the state court and his petition here, Galloway underwent a psychiatric evaluation with Daneen A. Milam. He now presents Milam's conclusions to the court. Attachments at Attachment I. The state court never saw this evaluation.

As the above paragraph makes clear, it is undeniable that Galloway has presented more evidence to this court than he did to the state court. None of this additional evidence, however, renders the petition unexhausted. Both *Anderson* and *Dowthitt* hold that expanding the record in the federal *habeas* petition is proper so long as the new evidence does not fundamentally alter the substance of the claim. *Anderson*, 338 F.3d at 388; *Dowthitt*, 230 F.3d at 748. As in *Anderson* and *Dowthitt*, Galloway has merely presented this court with a more detailed version of the facts alleged in the state court. Regarding his substance abuse, the new affidavits from his birth mother and step-mother serve only to supplement the evidence presented in the state writ proceedings, but do not fundamentally alter it. Galloway made the state

court aware of his substance abuse.  Now, he is merely providing this court with more details.  The same is true for the evidence regarding Galloway's psychological evaluations.  Galloway made the state court aware of his serious psychological problems and argued that his counsel were ineffective for failing to make the jury aware of those problems.  The new findings from Milam merely provide further support for his claim that he suffers from a psychological illness.

In short, the additional evidence Galloway has provided this court merely supplements the evidence he presented to the state court.  This type of supplementation does not render the claim exhausted.  See *Anderson*, 338 F.3d at 388 (stating that a claim is exhausted where evidence merely "supplements" the record but does not "place the claims in a significantly different legal posture").  Under *Anderson* and *Dowthitt*, elaborating on the factual allegations made to the state court is permissible.  *Anderson*, 338 F.3d at 388; *Dowthitt*, 230 F.3d at 748.  The respondent has not shown that Galloway is procedurally barred from making these additional factual assertions.

## 2.  *Are the Arguments Fundamentally Different?*

Next, the respondent contends that Galloway's argument to this court is fundamentally different than the argument he made to the state court.  In the state writ proceedings, Galloway alleged that his counsel were ineffective because they failed to present any of the available mitigating evidence at the punishment phase of

the trial.  Petitioner's Application at 6-7.  Now, in his federal petition, petitioner

reasserts that his counsel should have presented all available evidence, but he also

argues that his counsel were constitutionally ineffective for failing to further

investigate and uncover *more* mitigation evidence.  Petitioner's Memorandum in

Support of *Habeas Corpus* at 30-41.  The respondent maintains that this new

argument fundamentally alters Galloway's petition.

First of all, the only information Galloway argues his defense counsel should

have uncovered is the additional evidence discussed above in Part B1.  Petitioner's

Memorandum in Support of *Habeas Corpus* at 30-41 (detailing what Galloway's

counsel would, upon further investigation, have uncovered).  The court has already

held that none of this new evidence fundamentally alters Galloway's original petition.

 Moreover, Galloway *did* argue to the state court that his counsel were ineffective for

failing to investigate.  His petition to the state court asserts:

> Defense counsel clearly were aware of the potentially
> mitigating evidence in the State's exhibits, yet counsel did
> nothing to effectively marshal this evidence or subpoena
> witnesses from Applicant's past, such as counselors and
> psychologists from South Dakota, whose names and
> locations were set out in these records.  Counsel failed to
> elicit any of the evidence of mental disturbance that had
> been documented since Applicant was 20 years old.

Petitioner's Application at 9.  This statement is followed by a discussion of case law

in which courts have held counsel was ineffective for failure to investigate.  *Id.*  This

argument may not be as explicit as the one presented to this court, but it does make

clear that Galloway has always contended that his counsel should have elicited more mitigation evidence from the leads that were available. His claim is therefore exhausted.

## C.  Evaluation of Galloway's Petition on the Merits

Next, the respondent argues that Galloway's petition fails on the merits. To succeed on the merits, Galloway must satisfy the two prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, Galloway must prove by a preponderance of the evidence that (1) his counsel's performance was deficient, and (2) that this deficient performance prejudiced his defense. *Id.* at 687. To satisfy the first prong, Galloway must show that the counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. To satisfy the second prong, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The court has defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.*

When a petitioner argues that his counsel failed to adequately investigate mitigation evidence, the proper inquiry is "not whether counsel should have presented a mitigation case . . . [but] whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background *was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (emphasis in original).

Here, Galloway is arguing both that his counsel should have conducted further investigation, and that they should have presented to the jury the mitigation evidence they had already uncovered. The court must therefore examine (1) whether it was an objectively reasonable decision to not attempt to present any of the evidence they did have available, and (2) whether the investigation supporting that decision was reasonable.

In determining whether counsel's actions were objectively reasonable, courts should "indulge a strong presumption" that counsel's conduct falls within the range of reasonable assistance. *Strickland*, 466 U.S. at 689. A defendant must overcome this presumption that an action is sound trial strategy. *Id.* Additionally, the court must view counsel's decision in the context of counsel's perspective at the time of trial. *Wiggins*, 539 U.S. at 522-23.

## 1. *Failure to Present Evidence Already Available*

Galloway argues that his counsel should have presented all the mitigation evidence already available. This evidence includes: (1) the Glory House Records, (2) the medical records from Galloway's car wreck, (3) the interview with the prison director in South Dakota, (4) the impressions of Dr. Alan Hopewell, and (5) the South Dakota Human Services Center psychological evaluations. Galloway's trial defense team has stated repeatedly that the main reason they did not present any of this evidence relating to mitigation is that Galloway instructed them not to. Further,

Jerry Davis, the lead defense attorney for Galloway, stated that he felt it would be dangerous to go against Galloway's wishes because Galloway "was probably the type of person that might stick a big pen in your ear. He might try to harm you." Oral Deposition of Jerry Spencer Davis ("Davis Deposition") page 37 lines 12-14. In other words, Jerry Davis was apprehensive that Galloway might harm him or someone else if the defense team "cross[ed] him." *Id*. page 37 line 21. Ms. Paula Malacek, the senior legal assistant who befriended Galloway, stated that she believed Galloway would have "thrown a fit in court" if they had gone against his wishes. Oral and Videotaped Deposition of Paula Malacek ("Malacek Deposition") page 37 lines 9-11.

In the face of this evidence that Galloway refused to cooperate, Galloway nonetheless insists that counsel should have ignored his wishes and presented a mitigation case. Petitioner's Memorandum in Support of *Habeas Corpus* at 49-51. In support of this contention, he points to the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (the "Guidelines"). These Guidelines state that "[s]ome clients will initially insist that they want to be executed . . . they would rather die than spend the rest of their lives in prison . . . [i]t is ineffective assistance for counsel to simply acquiesce to such wishes, which usually reflect the distorting effects of overwhelming feelings of guilt and despair rather than a rational decision in favor of a state-assisted suicide." Guidelines § 10.5 commentary (2003). The petitioner also points to the 1989

version of the Guidelines, which advised that "[c]apital counsel frequently 'must not only struggle against the public and prosecution but against self-destructive behavior of the client as well.'" Guidelines § 11.4.2 commentary (1989).

These Guidelines (both the 1989 and 2003 version) are the centerpiece of Galloway's argument. He maintains that his counsel were obligated to ignore his demands and fight for his life despite his objections. The Guidelines may support this contention, but the Fifth Circuit has examined this very argument in the past and held that it is *not* ineffective assistance to comply with the requests of the client. In *Wood v. Quarterman*, 491 F.3d 196 (5th Cir. 2007), *cert. denied*, __ U.S. __, 128 S.Ct. 1087 (2008), the defendant Wood instructed his counsel not to enter any evidence at the punishment phase, and not to cross-examine any of the state's witnesses. *Wood*, 491 F.3d at 199. Wood was so adamant that he did not want his attorneys to aid him in any way that he informed the court that he wished to proceed *pro se*. *Id.* at 198. He explained that "he did not want to present any evidence during the punishment phase or cross-examine any of the state's witnesses . . . [and] did not want to force his lawyers to sit and do nothing." *Id.* The court denied this request, noting that Wood did not need to terminate his attorneys in order for them to do nothing. The court advised, "Mr. Wood, you control your defense. You know, attorneys ultimately are going to have to follow your lead as to what you want to do. They can't overrule you." *Id.* When the punishment phase of the trial began,

Wood's attorneys did exactly what they had been instructed to do: nothing. Predictably, Wood was sentenced to death. *Id*. at 199-200. Afterwards, he filed a petition under 28 U.S.C. § 2254, arguing that he had received ineffective assistance of counsel. The Fifth Circuit held Wood was not entitled to relief. *Id.* at 203. The court stated, "[n]either the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence." *Id.* More to the point, the court continued, "this court has held on several occasions that a defendant cannot instruct his counsel not to present evidence at trial and then later claim that his lawyer performed deficiently by following these instructions." *Id.*

Other Fifth Circuit cases agree with *Wood*. One such case is *Autry v. McKaskle*, 727 F.2d 358 (5th Cir.), *cert. denied*, 465 U.S. 1085 (1984). In *Autry*, the defendant expressed that he would rather die than spend his life in prison. *Id.* at 360. Just as in this case, Autry did not want any evidence regarding his "troubled youth" to be put before the jury. *Id.* He was sentenced to death and later filed a petition under 28 U.S.C. §2254 arguing he had received ineffective assistance of counsel. The state responded that Autry's argument was "flawed by the fact that he would not allow his counsel" to develop or present the mitigation evidence. *Id.* The court agreed, and held "[b]y no measure can Autry block his lawyer's efforts and later claim the resulting performance was constitutionally deficient." *Id.* at 361. Later the court

stated that, so long as the defendant "knowingly made the choices, [the attorney] was ethically bound to follow [the defendant's] wishes." *Id.* at 362.

The same principles are echoed in *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004). There, the court again stated that "when a defendant blocks his attorney's efforts to defend him, including forbidding his attorney from interviewing his family members for purposes of soliciting their testimony as mitigating evidence during the punishment phase of the trial, he cannot later claim ineffective assistance of counsel." *Id.* In short, the Fifth Circuit case law is consistent that a defendant cannot instruct his attorney to take a certain course of action and then later claim the attorney rendered ineffective assistance of counsel by following that instruction. See *id.*; *Autry*, 727 F.2d at 362; *Wood*, 491 F.3d at 203; *Dowthitt*, 230 F.3d at 748 (finding that counsel was not ineffective for failing to call family members to the stand during punishment phase where defendant stated that he did not want family members to testify); *Nixon v. Epps*, 405 F.3d 318, 325-26 (5th Cir. 2005) (finding that counsel was not ineffective for failing to present additional mitigating evidence over client's objection); *Amos v. Scott*, 61 F.3d 333, 348-49 (5th Cir.) (denying ineffective assistance claim for want of prejudice where defendant "strongly opposed" presenting any witnesses during punishment phase of trial), *cert. denied*, 516 U.S. 1005 (1995). The Guidelines may suggest that the lawyer does not have to follow his

client's advice, but the Fifth Circuit law makes clear that following express orders is not ineffective assistance.

Furthermore, this case includes a factor that was not present in any of the cases discussed above. Paula Malacek and Jerry Davis stated that they felt Galloway would react negatively, possibly even violently, if they went against his wishes in the courtroom. Davis Deposition page 37 lines 12-14; Malacek Deposition page 37, lines 9-11. Galloway maintains that this court should not consider that fact. He contends that any fear his attorneys had was unreasonable. He supports this contention by pointing to one instance when his counsel did go against his wishes in the courtroom. Petitioner Billy John Galloway's Supplemental Brief in Light of Depositions of Dennis Davis, Jerry Davis and Paula Malacek and Affidavit of Tena Francis ("Petitioner's Supplemental Brief") at 24. At that time, instead of reacting to this "disobedience" the way the attorneys had feared, Galloway sat quietly.

This court must gauge the reasonableness of the attorney's decisions from the counsel's perspective at the time the decisions were made. *Strickland*, 466 U.S. at 689. The decision to not present any mitigating evidence was made for the sake of an "orderly trial," Davis Deposition page 38 line 1, and to prevent an eruption that "would be a menace . . . to everybody" in the courtroom. *Id*. page 39 lines 2-8. See also *id*. page 40 lines 5-10. The attorneys' fear of Galloway's reaction was a factor in

that decision and thus affects this court's analysis of whether that decision was reasonable.

Galloway has the burden to show that his counsels' actions were objectively unreasonable when viewed from the perspective of those counsel at the time of trial. *Strickland*, 466 U.S. at 689. It is clear that counsel were not unreasonable in deciding not to put on a mitigation case when their apprehension of Galloway's potentially negative reaction is taken into account. If Galloway had reacted the way his counsel feared he would, that reaction would certainly have indelibly portrayed him to the jury as a danger to society.

Galloway attempts to distinguish his case from all those discussed above on the grounds that he, unlike the other defendants, did not unambiguously direct his attorneys not to present any mitigating evidence. In support of this argument, he compares his case to *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933 (2007). *Schriro* holds, like the Fifth Circuit cases discussed above, that it is not ineffective assistance for counsel to follow the client's instructions and to refrain from putting on mitigating evidence. *Id.* at 1938. But in *Schriro*, the defendant Landrigan was unequivocal about his wishes. Landrigan stated on the record that he did not want his attorneys to present a mitigation case. *Id.* at 1937. When the judge ordered the attorneys to present witnesses despite the defendant's objections, Landrigan stood

and interrupted the proceedings, arguing that he did not want the testimony to continue. *Id.*

Galloway argues that he was far more ambiguous than Landrigan about whether he wanted his counsel to present a mitigation case. Petitioner's Supplemental Brief at 21-23. He contends that he never gave an explicit instruction not to present *any* mitigation evidence. He admits that he instructed his attorneys not to shift responsibility to his co-defendant Kevin Varga, and not to present evidence that would portray his father in a negative light. He also admits that he would not cooperate with the psychological evaluation. But, he contends, he never instructed his attorneys to do nothing. *Id.* at 22-23.

It is true that the record does not reveal instructions that were as clear-cut as Landrigan's. Nevertheless, even where a defendant's instructions are less straightforward than Landrigan's, the Fifth Circuit has refused to find ineffective assistance. In *Autry*, the defendant expressed only that he did not want any evidence of his troubled youth presented, and that he would rather die than spend his life in prison. *Autry*, 727 F.2d at 360. The Fifth Circuit held Autry's counsel was not ineffective in interpreting these sentiments as instructions not to present a mitigation case. Galloway expressed the same sentiments to his lawyers. First, he refused the life sentence that was offered to him and told his lawyers that he would rather die than spend his life in a Texas prison. Malacek Deposition page 38 lines 11-17; page

40 line 5 - page 41 line 1.  And he specifically told them not to present evidence that would place his father in a bad light.  Even if *Autry* were not so closely analogous, the depositions of the defense team indicate that Galloway's instructions went beyond the mandate not to present his father in a negative light or not to blame Varga.  The record reflects that Galloway did not want to make any excuses for what he had done.  Malacek Deposition page 41 lines 11-24.  He didn't want to "punk out" or mar his "tough guy" image in any way.  *Id.*  As a result, he did not allow the defense team to present any mitigation evidence.  Davis Deposition pages 36-37.

In addition to Galloway's instructions, there are other reasons his counsel chose not to present the available evidence.  They chose not to present the history of his substance abuse based on their experience with jurors in the Hunt County area.  Davis Deposition page 35.  They believed the jurors would view substance abuse as an aggravating, rather than a mitigating, factor.  *Id.* at 33-35.  They also made the strategic decision not to call Dr. Hopewell, the doctor who had attempted to perform a psychiatric analysis of Galloway.  This decision was made based on the fact that Dr. Hopewell had been unable to extract any useful information from Galloway.  *Id*. at 45-48.  Furthermore, under Texas law, Galloway's counsel knew that calling Dr. Hopewell would have given the state the right to have Galloway examined by its own expert.  *Lagrone v. State*, 942 S.W. 602, 610 (Tex. Crim. App.) ("[W]hen the defendant initiates a psychiatric examination and based thereon presents psychiatric

testimony on the issue of future dangerousness, the trial court may compel an examination of appellant by an expert of the State's or court's choosing and the State may present rebuttal testimony of that expert based upon his examination of the defendant."), *cert. denied*, 522 U.S. 917 (1997).

The petitioner also argues that his counsel should have offered medical records resulting from a car crash Galloway caused. Galloway's counsel knew, however, that the circumstances surrounding this crash placed Galloway in an extremely negative light. At the time of the crash, Galloway was high on marijuana and methamphetamine. Attachments at Attachment H ¶¶ KKK-SSS. He later admitted that he had been on a "three-day methamphetamine binge" just before the crash. *Id.* at Attachment H ¶ PPP. Moreover, the crash occurred while Galloway was attempting to elude police. *Id.* at Attachment H ¶¶ KKK-PPP. He was driving recklessly, "swerving all over the road," and traveling between 60 and 70 miles per hour in an area where the speed limit was approximately 25-30 miles per hour. *Id.* at Attachment H ¶ LLL.

According to the Fifth Circuit, any conscious and informed trial strategy cannot be the basis for a claim of ineffective assistance of counsel unless the decision was so poor that it "permeate[d] the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 753 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir.), *cert. denied*, 537 U.S. 1018 (2002)), *cert. denied*, 540 U.S. 1186

(2004). None of Galloway's defense counsels' decisions are so poor as to have such an effect. Given Galloway's long history of substance abuse and his lack of success at any of the treatment programs he entered, trial counsels' decision to refrain from introducing this information into evidence was reasonable. Likewise, counsels' decision not to present Dr. Hopewell's limited findings, especially given that it would invite further psychiatric analysis by a hostile expert, was sound. Finally, the decision not to introduce evidence of the medical records resulting from the car crash was certainly reasonable given the condemning evidence associated with it.

In short, Galloway instructed his counsel not to put on a mitigation case. In addition, his counsel made reasoned strategic decisions not to enter specific pieces of evidence in order to keep out the aggravating factors that would accompany them. None of these decisions was so poor as to permeate the trial with unfairness. Under *Strickland*, Galloway must show that his counsel's performance fell below an objective standard of reasonableness to show that their performance was deficient. *Strickland*, 466 U.S. at 688. In addition, there is a strong presumption in favor of finding counsel's actions reasonable. *Id.* at 689. Galloway has not overcome this presumption. The strategic decisions discussed above, in combination with Galloway's instructions not to present a mitigation case, lead the court to conclude that the decision to present no mitigating evidence was objectively reasonable.

## 2. *Failure to Investigate*

The final issue is whether Galloway's counsel conducted an adequate investigation. Even if a defendant instructs his attorneys not to present any mitigating evidence, this does not "terminate counsel's responsibilities [to investigate] during the sentencing phase of a death penalty trial." *Wood*, 491 F.3d at 203 n.7 (quoting *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986)). Lawyers may not "'blindly follow' such commands [because] although the decision whether to use such evidence is for the client, the lawyer first must evaluate potential avenues and advise the client of those offering potential merit." *Id.* The court evaluates counsel's investigation under the same *Strickland* test discussed above. Galloway must prove by a preponderance of the evidence that (1) the investigation was deficient, and (2) that this deficient investigation prejudiced his defense. *Strickland*, 466 U.S. at 687. In other words, Galloway must show that the investigation fell below an objective standard of reasonableness and that there is a reasonable probability that a better investigation would have produced different results. *Id.*

With this standard in mind, the court examines the evidence Galloway argues would have been uncovered by a more thorough investigation. This evidence includes (1) the specific events that his birth mother and stepmother recounted in their affidavits, (2) more specific information about his learning problems in school, (3) an allegation of sexual abuse which Galloway would not confirm, (4) a car crash during

his childhood, and (5) the information from Daneen Milam's psychological assessment.

Concerning the information contained in the affidavits from Galloway's birth mother and stepmother, the court notes that his birth mother speaks almost exclusively about abuse she received from Galloway's father before Galloway was three years old. The petitioner's stepmother speaks almost exclusively about how neglectful Galloway's birth mother was before she lost custody. Neither of these affidavits thoroughly addresses Galloway's upbringing, much less any abuse he may have received. Galloway has not shown a reasonable probability that this evidence, had it been admitted, would have caused the jury to grant him a life sentence rather than a death sentence. It is not even clear that Galloway would have permitted such evidence to be presented, given his strong desire not to portray his family in a negative light or to blame his actions on anyone else. In particular, Galloway has not shown how evidence of suspected sexual abuse could have been presented at trial, given that he would not speak about this either to his defense team or to experts. Under *Strickland*, counsel's failure to uncover this evidence does not entitle Galloway to relief.

Galloway has not shown that he was prejudiced as a result of counsel's failure to further investigate and present evidence of his problems in school. This evidence consists of the fact that Galloway was expelled from the seventh grade for punching a

teacher in the face, after previously having been sent to various alternative education centers. This is not mitigating evidence. Galloway was certainly not prejudiced by the jury not hearing this information. Although Galloway presented evidence that he had some learning difficulties while he was in school, there is no evidence before this court that he is mentally retarded or that these difficulties were of such a nature that, had they been presented at trial, he would not have been sentenced to death.

With regard to the car crash during Galloway's childhood, the wreck occurred when his father was driving while intoxicated. This information would have had to come from Galloway himself, who was very loyal to his father, unwilling to speak badly of him, and adamant that no one else do so. Thus, it would not have been of any help to Galloway at trial, since the record indicates he would not have allowed it into evidence. Galloway cannot show that he was prejudiced by his counsel's failure to uncover this evidence.

Regarding the information in Milam's report, counsel cannot be faulted for failing to uncover it. They attempted to extract this exact information from Galloway by hiring Dr. Alan Hopewell. Unfortunately, Dr. Hopewell was unable to do so due to Galloway's uncooperative attitude. Original Answer at 14. Even though counsel stressed to him the importance of the examination, Galloway chose not to complete the tests Dr. Hopewell gave him. *Id.* During the state *habeas* process, Galloway again declined to participate in a psychological examination. Although federal counsel were

evidently successful in later convincing Galloway to cooperate with Milam, his trial counsel cannot be considered ineffective for failing to develop a full psychological examination when their client chose to be uncooperative.

In summary, Galloway has pointed to additional evidence that he considers mitigating, such as evidence about car crashes, his life before age three, suspicions that he was sexually abused in a foster home, and his relatively good behavior in the South Dakota prison system. With regard to all this evidence, however, he has either failed to show how it could have been presented without his cooperation, or failed to establish a reasonable probability that it would have prevented his death sentence. He has failed to show that the actions of his trial counsel were deficient or that any deficiencies prejudiced his case.

### III.  CONCLUSION

For the reasons discussed above, Galloway's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is **DENIED**.

**SO ORDERED**.

December 3, 2008.

_____
A. JOE FISH
**Senior United States District Judge**